UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                                          Case No.: 23-16430-MAM
                                                                Chapter 13
Robert Allen Gibson,

                                    Debtor.
_____/
Kelly Landers,                                                  Adv. Proc. No. 23-01239-MAM
                                    Plaintiff,
v.
Robert Gibson,
                                    Defendant.
_____/
Joseph Karam,                                                   Adv. Proc. No. 23-01240-MAM
                                    Plaintiff,
v .
Robert Gibson,
                                    Defendant.
_____/
Dick Dwyer,                                                     Adv. Proc. No. 23-01241-MAM
                                    Plaintiff,
v.
Robert Gibson,
                                    Defendant.
 _____/

## <u>MOTION FOR SUMMARY JUDGMENT IN FAVOR OF LANDERS AND KARAM</u>

COME NOW Plaintiffs Kelly Landers and Joseph Karam, and file this Motion for

Summary Judgment in favor of Landers and Karam, and state:

1.      This matter concerns two plaintiffs, Landers and Karam, who brought suit against

the Debtor in state court prior to the filing of this bankruptcy case.

2.      In the state court cases, Landers and Karam both attacked the lawfulness of

assignments drafted by the Debtor which were used to transfer a partial interest in Plaintiff's

claims to Debtor who is not a licensed attorney.

3.      Debtor admitted in deposition testimony that he prepared the assignments and that

they were used to permit him to litigate on behalf of himself and the respective Plaintiffs.

4.    Debtor also admitted that there was no consideration given when he presented the assignment agreement to the several Plaintiffs for signature, and that future compensation would be achieved by a split in the proceeds of any recovery obtained as a result of his legal work.

5.    In the state court cases, Debtor first worked as a 'pro se' litigant before employing licensed attorneys to represent his and the separate Plaintiffs' shared interests.

6.    The Landers case was essentially an adaptation of a case previously prosecuted by Landers' present counsel, and Landers was convinced to permit Debtor to bring a separate action after Debtor falsely informed Landers that her current counsel had been disbarred.

7.    In the Karam case, Debtor simply stated to Karam that he was an attorney and that he only performed legal services in accordance with contingency recovery that entailed Karam executing an assignment of Karam's partial interests in pending litigation.

8.    In a state probate case where Debtor had obtained an identical assignment from Karam, Circuit Court Judge Renatha Francis declared the assignment to be void as a matter of law and went further in stating that it amounted to a means to practice law without a license.

9.    Judge Francis based her ruling on the Florida Supreme Court Advisory Opinion in Shore v. Wall, SC17-1510 (2018), attached hereto as "Exhibit A," which stood for the proposition that someone who is not licensed to practice law, whether as an individual or on behalf of an entity, that acquires a portion of a cause of action by assignment for the purpose of litigating same on behalf of himself/herself, practices law on behalf of the assignor to the extent that said assignor retains a portion of the cause of action, and that said partial assignment for the purpose of litigating the entire cause of action amounts to the unlicensed practice of law. See the second to last paragraph in the Amended Order on Estate's Amended Motion to Strike Robert Gibson's Claims or Require Posting of Adequate Security and to Take Judicial Notice, attached

as "Exhibit B."

10.     The Debtor has used this bankruptcy filing in bad faith severely prejudicing Plaintiffs by delaying the resolution of Plaintiffs' claims against third parties to the detriment of said Plaintiffs.  Without the relief requested, Plaintiffs are unable to protect their interests and the Debtor is able to practice law without a license, a felony in the State of Florida.

11.     The granting of Summary Judgment is appropriate when there are no facts at issue and judgment can be obtained as a matter of law.  As to Plaintiffs' claims against the Debtor, these raise issues of law only as to the validity of the assignments of their interests to the Debtor can be determined in Plaintiffs' favor purely as a matter of law on a motion for summary judgment.

WHEREFORE, Plaintiffs Landers and Karam request that summary judgment be awarded in their favor as to Plaintiffs' claims that the assignments entered into with the Debtor are null and void as a matter of law, and for such other and further relief as the Court may find appropriate.

# S I S K I N D ,   P L L C

_____/s/ Jeffrey M. Siskind_____
Jeffrey M. Siskind, Esq.  FBN 138746
3465 Santa Barbara Drive   Wellington, Florida  33414
TELEPHONE  (561) 791-9565  FACSIMILE  (561) 791-9581
Email:  jeffsiskind@msn.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on this 10th day of August, 2024, a true and correct copy of the foregoing motion was filed via ECF and was thereby served upon all creditors and interested parties registered thereon.   On even date, a copy of the foregoing motion was served upon all unregistered necessary creditors and interested parties by U.S. Mail.

By:      _____/s/ Jeffrey M. Siskind_____
JEFFREY M. SISKIND   FBN 138746

# EXHIBIT A

# Supreme Court of Florida

––––––––––––

No. SC17-1510

––––––––––––

**THE FLORIDA BAR RE:  ADVISORY OPINION—
SHORE v. WALL, et al.**

October 4, 2018

PER CURIAM.

James Wall filed with the Standing Committee on the Unlicensed Practice of Law (Standing Committee) a request for issuance of an advisory opinion pursuant to the procedures set forth in Rule Regulating the Florida Bar 10-9.1 and this Court's opinion in *Goldberg v. Merrill Lynch Credit Corp.*, 35 So. 3d 905 (Fla. 2010).  In the request, Wall alleged that Jeffrey Paine and his company, Jupiter Asset Recovery, LLC (collectively "JAR"), engaged in the unlicensed practice of law in connection with JAR's attempt to recover surplus funds from the Manatee County Clerk of Court's registry on Wall's behalf.  The Standing Committee held a public hearing where it considered live and written testimony, *see* Rule Regulating the Florida Bar 10-9.1(f), and ultimately filed with this Court a

proposed advisory opinion concluding that JAR's conduct, as alleged by Wall and if taken as true, would constitute the unlicensed practice of law.[1]

After the Standing Committee's proposed advisory opinion was filed, interested parties were permitted to file briefs in support of or in opposition to the proposed advisory opinion. *See* R. Regulating Fla. Bar 10-9.1(g)(3). JAR and Global Discoveries, Ltd., filed briefs in opposition to the proposed advisory opinion; the Standing Committee filed a response to the briefs. After considering the proposed opinion and the briefs of the interested parties, the Court approves the proposed advisory opinion as set forth in the appendix to this opinion.[2]

It is so ordered.

PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA and LAWSON, JJ., concur.
CANADY, C.J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

CANADY, C.J., dissenting.

I adhere to the view that "the Florida Constitution gives this Court no

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.; R. Regulating Fla. Bar 10-9.1(g).

2. References in the Appendix to TABS A, B, and C, are to the attachments to the proposed advisory opinion originally filed by the Standing Committee in this case on August 15, 2017.

authority to issue" the advisory opinions regarding pending litigation contemplated

by rule 10-9.1. *Fla. Bar re Advisory Op.—Scharrer v. Fundamental Admin. Servs.*,

176 So. 3d 1273, 1279 (Fla. 2015) (Canady, J., dissenting).  I therefore would

dismiss this proceeding.

Original Proceeding – The Florida Bar Re: Advisory Opinion

Kellie D. Scott, Chair, Jeffrey T. Picker, and William A. Spillias, Standing
Committee on Unlicensed Practice of Law, Tallahassee, Florida,

     for Petitioner

Kevin P. Tynan of Richardson & Tynan, P.L.C., on behalf of Jupiter Asset
Recovery, LLC and Jeffrey Paine, Tamarac, Florida; Amy L. Dilday, Starlett M.
Massey, and Jonathan D. Kaplan of McCumber, Daniels, Buntz, Hartig, Puig, &
Ross, P.A., on behalf of Global Discoveries, Ltd., Tampa, Florida,

     Responding

# APPENDIX

### THE FLORIDA BAR
### STANDING COMMITTEE ON THE
### UNLICENSED PRACTICE OF LAW


FAO #2017-1, *SHORE V. WALL, ET. AL.*

_____/


### PROPOSED ADVISORY OPINION



August 15, 2017

<u>INTRODUCTION</u>

This request for a formal advisory opinion is brought pursuant to Rule 10-9.1 of the Rules Regulating The Florida Bar and *Goldberg v. Merrill Lynch Credit Corp.,* 35 So. 3d 905 (Fla. 2010); (TAB A). [1]   The Petitioner, James Wall (hereinafter, "Wall"), is a defendant in an interpleader action filed by the Clerk of the Circuit Court of Manatee County (Case No. 2014 CA 3155).  In Wall's Answer to Complaint For Interpleader and Objection and Defenses to Jupiter Asset Recovery, LLC's Claim to Surplus Funds, he asserted that Jupiter Asset Recovery, LLC (hereinafter, "JAR") engaged in the unlicensed practice of law.  The Circuit Court, citing *Goldberg*, found that it did not have jurisdiction over the unlicensed practice of law claim and stayed the case pending a determination by the Supreme Court of Florida whether JAR's conduct constitutes the unlicensed practice of law (TAB A, p. 23).

Pursuant to Rule 10-9.1(f) of the Rules Regulating The Florida Bar, public notice of the hearing was provided on The Florida Bar's website, in The Florida

---

[1] Petitioner filed an unlicensed practice of law complaint/request for formal advisory opinion, which was originally investigated by the local circuit committee under Rules 10-5 and 10-6 of the R. Regulating Fla. Bar.  Finding that respondent, Jeffrey Paine, and his company, Jupiter Asset Recovery, LLC, engaged in the unlicensed practice of law, the circuit committee offered respondent a cease and desist affidavit, which he refused to sign.  Because there is no Florida case law on point, the local circuit committee closed its investigation and forwarded the request for formal advisory opinion to the Standing Committee on the Unlicensed Practice of Law (hereinafter, "Standing Committee").

Bar *News*, and in the *Orlando Sentinel*.  The Standing Committee held a public hearing on January 26, 2017.  Testifying on behalf of the petitioner were attorneys Ryan J. Hittel and Christopher M. Hittel.  Testifying on behalf of JAR was attorney Kevin Tynan and Jeffrey Paine (hereinafter, "Paine").  Also testifying were attorneys Starlett Massey and Jonathan D. Kaplan (Tab B).  In addition to the testimony presented at the hearing, the Standing Committee received written testimony from the Petitioners and JAR/Paine which has been filed with this Court (Tab C).

The question presented for consideration by the Standing Committee is whether a nonlawyer company is engaged in the unlicensed practice of law when it holds itself out as having special knowledge on how to recover excess proceeds from a tax deed sale held by the Clerk of Court under Chapter 197, Fla. Stat.; identifies and contacts owners of excess tax deed sale proceeds for the purpose of offering to recover the excess proceeds on their behalf from the Clerk of Court; offers the owners of excess proceeds a contingency arrangement using a purported assignment modified by an agreement to share the excess proceeds upon recovery, with the owner retaining a 60% interest in the excess proceeds; requests from the Clerk of Court the surplus funds based on the purported assignment; and files pleadings in interpleader actions to recover the surplus funds.

*GOLDBERG V. MERRILL LYNCH CREDIT CORP.*

In *Goldberg*, the petitioners filed class action lawsuits to recover document preparation fees charged by respondent Merrill Lynch for services performed by its clerical personnel in processing mortgage loans.  Merrill Lynch moved to dismiss the complaints, arguing, among other things, that the circuit court lacked jurisdiction to hear any claims relating to the unlicensed practice of law.  The circuit court granted the motions and dismissed the cases.   The Fourth District Court of Appeal affirmed the dismissals because the respondents had not previously been prosecuted for the unlicensed practice of law by The Florida Bar or disciplined by this Court. This Court approved the Fourth District's decision to affirm the dismissals finding that:

> To state a cause of action for damages under any legal theory that arises from the unauthorized practice of law, we hold that the pleading must state that this Court has ruled that the specified conduct at issue constitutes the unauthorized practice of law. (citation omitted)  Stated another way, a claimant must allege as an essential element of any cause of action premised on the unlicensed practice of law that this Court has ruled the activities are the unauthorized practice of law. (citations omitted)
>
> * * *
>
> [A] plaintiff will not be able to state a cause of action premised on the unauthorized practice of law on a case of first impression (where this Court has not ruled on the actions at issue).  In those cases, the pleading may be dismissed without prejudice or the action may be stayed

- 7 -

until a determination from this Court pursuant to the
advisory opinion procedures of rule 10-9.1 or the
complaint and injunctive relief procedures of rules 10-5,
10-6, and 10-7 of the Rules Regulating The Florida Bar.
(citations omitted)

*Goldberg* at 907-8.

In staying the Manatee County interpleader action at issue here, the circuit

court cited to *Goldberg*, and noted that the Supreme Court of Florida has exclusive

jurisdiction to determine the issue of unlicensed practice of law (TAB A, p. 23).

### *RULE 10-9.1 OF THE RULES REGULATING THE FLORIDA BAR*

In *Goldberg*, this Court recognized that rule 10-9.1(c) of the Rules

Regulating The Florida Bar prevents a proposed formal advisory opinion from

being issued "with respect to any case or controversy pending in any court or

tribunal in this jurisdiction" thereby prohibiting the Standing Committee from

issuing a proposed formal advisory opinion while the underlying action is stayed or

dismissed without prejudice.  The Court, therefore, suspended the rule in the

circumstances described in *Goldberg* and directed The Florida Bar to propose a

rule change according to the opinion.  Subsequently, rule 10-9.1 was amended to

add language to provide that "the [Standing Committee] shall issue a formal

advisory opinion under circumstances described by the court in *Harold Goldberg*

*v. Merrill Lynch Credit Corporation*, 35 So. 3d 905 (Fla. 2010) when the petitioner

is a party to a lawsuit and that suit has been stayed or voluntarily dismissed without

prejudice." The Court, sua sponte, amended rule 10-9.1(c) in *In re: Amendments to Rule Regulating The Florida Bar 10-9.1*, 176 So. 3d 1273 (Mem) (Fla. 2015).[2] Consequently, if a proper *Goldberg* request is brought, a proposed advisory opinion must be issued.[3]

Because this is a case of first impression, and the circuit court stayed the action pending a determination from this Court, this was a proper *Goldberg* request. A public hearing was held on January 26, 2017, after which the Standing Committee voted to issue the proposed formal advisory opinion that follows.

<u>FACTS</u>

The factual allegations relating to Wall's claim that JAR engaged in the unlicensed practice of law are contained in paragraphs numbered 15 – 47 of Defendant, James M. Wall's Answer to Complaint for Interpleader and Objection and Defenses to Jupiter Asset Recovery, LLC's Claim to Surplus Funds (TAB A, pp. 12 – 17), Mr. Wall's April 15, 2015 statement accompanying his unlicensed practice of law complaint (TAB A, pp. 3 – 4), and the January 13, 2017, Statement of Petitioner, James M. Wall, For Hearing on Request for *Goldberg* Advisory

---

[2] Consistent with *Goldberg*, the amendment deleted the requirement for a "voluntary" dismissal.

[3] Footnote 3 of *Goldberg* provides "To be clear, the Florida Bar shall issue a formal advisory opinion upon request of a party in the circumstances described herein." 35 So. 3d at 908.

Opinion (TAB C, pp. 2 – 17).  Wall alleged the following operative facts which are summarized in relevant part as follows:

1. Paine/JAR contacted Wall regarding a tax deed surplus being held in the court's registry after a tax deed sale of Wall's property.  (TAB A, p. 3 and p. 12, paragraph 15)

2. Paine convinced Wall to hire JAR/Paine to recover the surplus funds on his behalf (TAB A, p. 12, paragraph 16).  Wall assumed he was dealing with a licensed attorney (TAB C, p. 3, paragraph 6).

3. Paine sent a notary to Wall's business with two documents to sign, an "Agreement" (TAB A, p. 5) and an "Absolute Assignment of Interest in Tax Deed Surplus Proceeds" (TAB A, p. 6).  Wall signed both documents. (TAB A, p. 13, paragraphs 17 and 19)

4. Wall believed at the time he signed the Agreement and Absolute Assignment that Paine was agreeing to represent him. (TAB A, p. 4)

5. The Agreement attempts to allow JAR to file documents to recover the tax deed surplus on Wall's behalf, with 60% of the proceeds going to Wall and the remainder (minus any costs) going to JAR. (TAB A, p. 13, paragraph 18)

6. Under the Agreement, Wall purports to transfer his interest in the surplus funds to JAR so that JAR can "file all necessary documents in order to recover any

- 10 -

and all monies available as a result of the tax deed sale." (TAB A, p. 15, paragraph 33)

7. The Agreement also states that JAR shall "make every effort to obtain any available funds through the Clerk of Court." (TAB A, p. 15, paragraph 34)

8. The essence of the Agreement is clear, JAR will file the necessary court documents to obtain payment from the Clerk of Court on a contingency basis, for a 40% fee (which would amount to a fee near $94,000). (TAB A, p. 16, paragraph 35)

9. Because JAR is not a law firm, and Paine is not an attorney, the only way JAR could file documents with the court on Wall's behalf was to come before the court as a straw-man assignee. (TAB A, p. 16, paragraph 36)

10. JAR did not disclose the Agreement when filing his proof of claim with the Clerk of Court to recover the surplus tax deed funds nor did it disclose the Agreement to the court in the interpleader action so that it would not be apparent on the face of its claim that it was representing another party. (TAB A, p. 16, paragraph 37, and TAB A, pp. 7 – 9)

11. Even though Wall signed the Absolute Assignment and Agreement he understood that JAR/Paine would receive 40% of all funds recovered in return for their work to recover the funds. (TAB A, p. 3)

12. At the time Wall signed the Absolute Assignment and Agreement, liens on the property held by the IRS and Manatee County Code Enforcement exceeded the amount of the surplus. (TAB A, p. 13, paragraph 20)

13. After the tax deed sale, the IRS lien was paid in full at the closing of the sale of another property Wall owned, and the Manatee County Code Enforcement lien was substantially reduced. The payment of the IRS lien and the reduction in the code enforcement fine resulted in the surplus funds available to the owner increasing from $0 to approximately $235,000. (TAB A, p. 13, paragraphs 21 – 23)

14. JAR seeks to recover 40% of this $235,000. (TAB A, p. 13, paragraph 24)

15. Paine drafted a letter for Wall's signature to the attorney for the Clerk of Court in the interpleader action (TAB A, p. 10). The letter, which Wall did not sign, includes the following language: "I understand that Jupiter has filed an Answer and Cross Claim in this matter which protects my interest in these funds[]" and "Please consider this letter as notice that I shall not file a responsive pleading in this case and I consent to a default against me in this case." (TAB A, p.10 and p. 16, paragraphs 38 – 40)

<u>DISCUSSION</u>

As this Court noted in *The Florida Bar re: Advisory Opinion – Scharrer v. Fundamental Administrative Services*, 176 So. 3d 1273, 1278 (Fla. 2015), it is not the Standing Committee's role to sit as the trier of facts or to decide disputed facts:

> Although we recognize that the Standing Committee does not sit as a trier of fact, and it is not the Committee's role to decide disputed issues of fact, our decision in <u>Goldberg</u> does authorize the Standing Committee to  determine whether the specific facts as alleged in a  petition for an advisory opinion, if those facts are taken as  true, would constitute the unlicensed or unauthorized  practice of law.

Thus, in reviewing the alleged facts the Standing Committee takes as true those facts, and applies existing case law to the facts to determine whether the activity in question constitutes the unlicensed practice of law.

Essentially, Wall alleged that JAR/Paine: (1) held himself out as an attorney and as having special knowledge on how to recover excess proceeds from a tax deed sale, (2) represented him in the interpleader action, and (3) prepared legal documents for him which affected his important legal rights.

<u>Holding Out</u>

Allegations regarding Paine holding himself out as an attorney are contained within paragraphs 2 and 4 above, and paragraph 43 of Wall's Interpleader Answer (TAB A, p. 17), which states that:

> Mr. Paine also holds himself out to be an attorney on his website, despite not being licensed to practice law in Florida.  See Composite Exhibit 'E', attached (Google

- 13 -

search showing title of jupiterassetrecovery.com to be
"Jupiter Asset Recovery | Jeffrey Paine Attorney"; Source
code of jupiterassetrecovery.com containing the page title
"Jupiter Asset Recovery | Jeffrey Paine Attorney".)

Taken as true, these allegations raise unlicensed practice of law concerns

because it constitutes the unlicensed practice of law for nonlawyers to hold

themselves out as lawyers. *The Florida Bar v. Warren*, 655 So. 2d 1131 (Fla.

1995). As this Court found in *The Florida Bar v. Gordon*, 661 So. 2d 295 (Fla.

1995), it constitutes the unlicensed practice of law for nonlawyers to "impliedly or

expressly, personally or by use of advertisement, hold[] themselves out as lawyers

and authorized to practice law in Florida and describing themselves as lawyers,

attorneys, attorneys at law, esquire, counselor, counsel, or any other title that is

designed to lead a member of the public into believing that respondents are

licensed to practice law in Florida and able to render assistance with legal matters."

By contacting owners of excess tax deed sale proceeds for the purpose of

offering to recover the excess proceeds on their behalf from the Clerk of Court,

JAR/Paine is implicitly holding out as having special knowledge on how to recover

the excess proceeds. This raises unlicensed practice of law concerns because it

constitutes the unlicensed practice of law for a nonlawyer to hold himself out as

having special knowledge or expertise in legal areas. *The Florida Bar v. Davide*,

702 So. 2d 184 (Fla. 1997) (nonlawyer engaged in unlicensed practice of law and

enjoined from advertising that his or her company specializes in legal areas or that gives the public the expectation that the company has expertise in the field of law, and that describes legal procedures).

<u>Representation in Interpleader Action</u>

The gravamen of the allegations in paragraphs 3 – 15 above are that JAR/Paine had Wall execute both an Absolute Assignment and an Agreement to assist Wall in obtaining the tax deed surplus from the Clerk and the court. However, JAR/Paine only filed the Absolute Assignment with the Clerk and the court in the interpleader action, so that it would appear to the Clerk and court that Wall assigned his interest in the tax deed surplus to JAR/Paine.  The Absolute Assignment provides "This Agreement is complete, in and of itself, representing the entire agreement between all Parties hereto[.]"  However, the Agreement, executed contemporaneously with the Absolute Assignment, indicates that there was not an absolute or complete assignment.  The Agreement, which mandates that JAR make every effort to obtain the surplus funds, provides that Wall will receive 60% of the surplus funds recovered by JAR.  The remaining 40% would go to JAR.  The effect of this Agreement, which was not disclosed to the Clerk or the court, is that any action that JAR took with the Clerk or the court in the interpleader action to obtain the tax deed surplus it took not only on its own behalf, but on behalf of Wall as well.  Before Wall filed his Answer in the interpleader

action, JAR/Paine prepared and sent him a letter to sign and send to the Clerk's attorney, wherein Wall asserts his understanding that JAR filed an Answer and Cross Claim which protects his interest in the surplus funds and that he would not be filing a responsive pleading in the interpleader case and that he consents to a default judgment against him.  Wall did not sign this letter.

Taken as true, the allegations in paragraphs 3 – 15 above raise unlicensed practice of law concerns because it constitutes the unlicensed practice of law for a nonlawyer to represent another in court.  As this Court stated, axiomatically, "It is generally understood that the performance of services in representing another before the courts is the practice of law."[4]  *See The Florida Bar v. Smania*, 701 So. 2d 835 (Fla. 1997) (nonlawyer enjoined from appearing in court on behalf of others other than as a witness); *The Florida Bar v. Eubanks*, 752 So. 2d 540 (Fla. 1999) (nonlawyer engaged in unlicensed practice of law and enjoined from appearing in any Florida court, directly or indirectly, as a spokesperson or representative for litigants in any court proceeding); *The Florida Bar v. Snapp*, 472 So. 2d 459 (Fla. 1985) (nonlawyer engaged in unlicensed practice of law and enjoined from representing an individual other than himself in court proceedings); *The Florida Bar v. Strickland*, 468 So. 2d 983 (Fla. 1985) (nonlawyer engaged in

---

[4] *The Florida Bar v. Sperry*, 140 So. 2d 587, 591 (Fla. 1962), *judg. vacated on other grounds*, 373 U.S. 379 (1963).

- 16 -

the unlicensed practice of law and enjoined from appearing in Florida courts on

behalf of a party in family law matters); *The Florida Bar v. Rich*, 481 So. 2d 1221

(Fla. 1986) (nonlawyer engaged in unlicensed practice of law and enjoined from

representing others in court in eviction and criminal matters).

Here, JAR/Paine was representing Wall because Wall still had an interest in

the litigation. This was not a situation where Wall signed over all of his interests

in the proceeds of the sale to JAR/Paine so that JAR/Paine became the party to the

action. Instead, JAR/Paine offered Wall a contingency fee agreement where Wall

retained an interest in the proceeds of the sale as he stood to gain 60% from any

recovery. Wall was, therefore, a party to the action and was being represented by

JAR. By so representing Wall, JAR/Paine engaged in the unlicensed practice of

law.

<u>Preparation of Documents Affecting Legal Rights</u>

Taken as true, the allegations in paragraphs 9 and 15 above raise unlicensed

practice of law concerns because it constitutes the unlicensed practice of law for a

nonlawyer to prepare a document for another which affects their important legal

rights. *The Florida Bar v. Sperry*, 140 So. 2d 587, 591 (Fla. 1962), *judg. vacated*

*on other grounds*, 373 U.S. 379 (1963); *The Florida Bar v. Gordon*, 661 So. 2d

295 (Fla. 1995) (nonlawyer engaged in unlicensed practice of law and enjoined

from allowing members of the public to rely on respondents to properly prepare

legal forms or legal documents affecting an individual's legal rights); *The Florida Bar v. Eidson*, 703 So. 2d 442 (Fla. 1997) (nonlawyer enjoined from preparing and filing legal documents on behalf of another); *The Florida Bar v. Williams*, 388 So. 2d 564 (Fla. 1980) (nonlawyer enjoined from assisting customers in preparing documents or forms necessary for submission to any court or governmental agency); *The Florida Bar v. Miravalle*, 761 So. 2d 1049, 1051 (Fla. 2000) ("This Court has repeatedly held that the preparation of legal documents by a nonlawyer for another person to a greater extent than typing or writing information provided by the customer on a form constitutes the unlicensed practice of law." (citations omitted)). Both the letter to the Clerk's attorney consenting to a default judgment and the answer filed by JAR/Paine in the interpleader action would certainly affect Mr. Wall's important legal rights by requesting from the Clerk of Court surplus funds.

Further, taken as true, the above allegations raise unlicensed practice of law concerns to the extent Wall relied on JAR/Paine to file with the Clerk and court the necessary documents to obtain the surplus tax deed funds. As this Court noted in *The Florida Bar v. Brumbaugh*, 355 So. 2d 1186, 1193-4 (Fla. 1978), "it is clear that her clients placed some reliance upon her to properly prepare the necessary legal forms for their dissolution proceedings. To this extent we believe that Ms. Brumbaugh overstepped proper bounds and engaged in the unauthorized practice

of law." *See also The Florida Bar v. Williams*, 388 So. 2d 564 (Fla. 1980) (nonlawyer enjoined from allowing members of the public to rely on her to properly prepare legal forms or legal documents affecting a customer's legal rights).

<u>PUBLIC HARM</u>

Separate from the unlicensed practice of law issue, the Standing Committee was also concerned that JAR/Paine's business model of only filing the Absolute Assignment with the Clerk and court, and not also disclosing the contemporaneously executed Agreement, when attempting to recover the tax deed surplus was, at a minimum, misleading, and perhaps, a fraud on the court, because the true relationship between JAR/Paine and its customers is not disclosed to the Clerk and court. Without knowledge of the Agreement, the court would have no way of knowing about the unlicensed practice of law occurring before it. If an attorney filed misleading documents with a court that hid his or her true relationship with the client, the attorney would be subject to discipline for lack of candor toward the tribunal. Just as lawyers must avoid conduct that undermines the integrity of the adjudicative process, this Court must ensure that nonlawyers do not undermine the integrity of the adjudicative process. As this Court noted in *The Florida Bar v. Moses*, 380 So. 2d 412, 417 (Fla. 1980), "the single most important

- 19 -

concern in the Court's defining and regulating the practice of law is the protection of the public from incompetent, unethical, or irresponsible representation."

The Standing Committee had similar concerns about the language in the Absolute Assignment, which provides that "This Agreement is complete, in and of itself, representing the entire agreement between all Parties hereto." The statement was patently false. The Absolute Assignment did not represent the entire agreement between JAR/Paine and Wall; there was also the contemporaneously executed Agreement between the parties. It was this Agreement which resulted in JAR/Paine's improper representation of Wall before the Clerk and the court in the interpleader action. The Standing Committee felt that this patently false language in the Absolute Assignment was, at a minimum, misleading, and perhaps a fraud on the court, and warrants the public's protection by this Court.

CONCLUSION

It is the opinion of the Standing Committee on the Unlicensed Practice of Law that a nonlawyer company is engaged in the unlicensed practice of law when it holds itself out as having special knowledge on how to recover excess proceeds from a tax deed sale held by the Clerk of Court under Chapter 197, Fla. Stat.; identifies and contacts owners of excess tax deed sale proceeds for the purpose of offering to recover the excess proceeds on their behalf from the Clerk of Court; offers the owners of excess proceeds a contingency arrangement using a purported

assignment modified by an agreement to share the excess proceeds upon recovery, with the owner retaining a 60% interest in the excess proceeds; requests from the Clerk of Court the surplus funds based on the purported assignment; and files pleadings in interpleader actions to recover the surplus funds.

The Standing Committee is not sitting as the trier of fact in this matter. Should this Court adopt the Standing Committee's proposed formal advisory opinion, it would establish the precedent required by *Goldberg* and be the standard to be applied by the trier of fact in ultimately deciding whether the defendants engaged in the unlicensed practice of law.

Respectfully Submitted,

/s/ Kellie D. Scott by Jeffrey T. Picker
Kellie D. Scott, Chair
Standing Committee on
Unlicensed Practice of Law
The Florida Bar
651 E. Jefferson Street
Tallahassee, Florida 32399-2300
(850) 561-5840
Fla. Bar No. 432600
Primary Email: upl@flabar.org

/s/ Jeffrey T. Picker
Jeffrey T. Picker
Fla. Bar No. 12793

/s/ William A. Spillias
William A. Spillias
Fla. Bar No. 909769
The Florida Bar
651 East Jefferson Street

- 21 -

Tallahassee, Florida 32399-2300
(850) 561-5840
Primary Email: jpicker@flabar.org
Secondary Email: upl@flabar.org

EXHIBIT B

Filing # 122467903 E-Filed 03/04/2021 08:07:32 AM

**IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

IN RE:

                                  Case No: 502018CP001919XXXXMB

        Estate of John Snow

_____/

**AMENDED ORDER ON ESTATE'S AMENDED MOTION TO STRIKE
ROBERT GIBSON'S CLAIMS OR REQUIRE POSTING OF
ADEQUATE SECURITY AND TO TAKE JUDICIAL NOTICE**

THIS CAUSE came before the Court at an evidentiary hearing on the Estate's Amended

Motion to Strike Robert Gibson's Claims or Require Posting of Adequate Security and to Take

Judicial Notice on January 22, 2021, and the Court having heard argument of the parties, reviewed

the record in this case and related matters, and being otherwise fully advised upon the premises,

does hereby be it

ORDERED AND ADJUDICATED, that as to the Estate's Motion to Strike Mr. Gibson's

substantive claims;

Mr. Gibson admitted that he filed motions in this case on the basis of being assigned claims

by Joseph P. Karam, a former commercial tenant of the decedent, John Snow, and that the claims

were related to claims brought by Mr. Karam in Palm Beach County case no. 2018-CA-006030.

The Estate attached a copy of Mr. Karam's complaint as Exhibit A" to its motion.

Mr. Gibson also admitted that he initially met Mr. Karam when he worked for the estate's

counsel and eventually offered to participate in Mr. Karam's cause of action in accordance with the

terms of the Acknowledgment of Assignment of Claim ("Assignment") which Mr. Gibson admitted

that he drafted for Mr. Karam's signature.

Mr. Gibson admitted that he has used documents similar to the Assignment to acquire causes

of action from others, and that the Assignment is the basis for his standing in this case.

Mr. Gibson admitted that he knew that Mr. Karam was involved in eviction litigation with the Estate, the purpose of which was to evict Mr. Karam from a commercial building owned by the Decedent, when he drafted the Assignment and obtained Mr. Karam's signature.

Mr. Gibson admitted that he was aware that Mr. Karam had filed suit against the Estate for unlawful eviction, but stated that Mr. Karam's case was "thrown out" because the case had already been assigned to Mr. Gibson.  Contrary to Mr. Gibson's statements, however, Estate counsel attached as "Exhibit C" an order by the Honorable James Nutt which dismissed Mr. Karam's claims against the Estate with prejudice.

The Court has compared Mr. Karam's claims in the case which he brought to conclusion against the Estate and finds that they are sufficiently similar to those upon which Mr. Gibson rests and concludes that the claims advanced by Mr. Gibson in this case are barred by collateral estoppel.

Mr. Gibson testified that he has a counterclaim for wrongful eviction which is now noticed for trial.  However, the only case involving Mr. Gibson is Palm Beach County case no. 2018-CC-001229, within which Mr. Gibson filed counterclaims against the Estate for unjust enrichment and wrongful eviction on June 8, 2018 at Docket Entry 23.  It should be also noted that Palm Beach County case no. 2018-CC-007227 wherein Mr. Karam was represented by counsel who raised affirmative defenses of unjust enrichment and wrongful eviction "as asserted more fully in the Counterclaim of Robert Gibson in Case No. 2018CC001229XXXXMB" was consolidated with case no. 2018-CC-001229.

Mr. Gibson testified that he had appealed this case but court records indicate that he likely confused another case involving Mr. Karam (Palm Beach County case no. 2017-CA-003383, styled Joseph P. Karam v. Lorie Fischer) for which Mr. Gibson obtained an assignment of Mr. Karam's claims.  After Mr. Gibson appealed an adverse order in this case

to the Fourth District Court of Appeals (case no. 4D18-1253), the 4th DCA affirmed the lower court decision and issued a mandate on April 5, 2019. A troubling aspect of that case which should be noted is that, although the Honorable Donald W. Hafele recognized that Mr. Karam assigned his interest to Mr. Gibson, Mr. Karam kept filing papers which indicates that Mr. Karam did not fully understand the meaning of the Assignment which he executed. See Judge Hafele's order at Docket Entry 99.

AND FURTHER, as to the Estate's vexatious litigant claim;

Mr. Gibson claims that he was not adjudicated a vexatious litigant pursuant to Section 68.093, Florida Statutes, despite the Honorable James Martz's July 9, 2019 order in Palm Beach case no. 2018-CA-006574 stating otherwise. Mr. Gibson further claimed that Judge Kastranakes who replaced Judge Martz in response to Mr. Gibson's successful motion for recusal stated that the order was not final and cannot be relied upon (See Judge Kastranakes' order attached as "Exhibit C" to Docket Entry 29 in this case). The Court notes that this order was issued in yet another case (Palm Beach County case no. 2018-CA-012099) in which Mr. Gibson, a non-attorney, was assigned a cause of action and that neither the Estate or the Estate's counsel was a party to that action.

Mr. Gibson timely filed a Verified Motion to Reconsider Order Granting Defendant's Motion to Determine that Robert Gibson is a Vexatious Litigator and Require Furnishing of Appropriate Security" within which Mr. Gibson states as a reason for his failure to appear some confusion brought on by his adversary's hearing scheduling changes. However, the record shows that the July 9, 2019 hearing was set by the Court in a Notice of Hearing which was docketed on May 28, 2019  (See Docket Entry 120).

Moreover, the Motion which was heard on July 9, 2019 (filed May 26, 2019 at Docket Entry 121) attached a list of cases which Mr. Gibson filed pro se and lost in the preceding five years. Two of the unsuccessful circuit court cases are cases in which Mr.

Gibson was assigned rights to litigate by and on behalf of the owners of the causes of action. In the third unsuccessful case, Mr. Gibson initiated a cross-claim against the codefendants. All three of the listed unsuccessful appeals were initiated by Mr. Gibson. The list does not include Mr. Gibson's unsuccessful malpractice action within which this motion practice occurred because Mr. Gibson has appealed the unfavorable result.

The Court addressed Mr. Gibson's reconsideration motion at a hearing on August 15, 2019 by allowing fourteen (14) days for the parties to provide memoranda of law to address whether or not unsuccessful pro se appeals could be counted toward the five-in-five case threshold which triggers Florida's vexatious litigant statute, during which time Mr. Gibson's adversary (who is counsel for the Estate in this case) provided the Court with an additional unsuccessful pro se case and three (3) cases to be watched which are relevant because Mr. Gibson took assignments of the original litigants' interests (See Docket Entries 153, 154) while testifying in this case that there were not many instances of his acquiring cases by taking assignments. Also worth noting are two yet additional cases provided to the Court in Docket Entry 157.

Opposing counsel timely filed its supportive Memoranda of Law on August 29, 2019 at Docket Entry 155. Mr. Gibson did not timely file a Memorandum of Law and instead filed an objection which falsely claimed that opposing counsel had failed to abide by the Court's order and stated that he conducted "key word search[es]" for Florida cases which mentioned "vexatious" or "68.093" and identified 59 cases, but could not find an opinion to support his position that appeals cannot be counted toward meeting the five-in-five vexatious litigant threshold. Mr. Gibson also requested two (2) additional days to provide the Court with a bookmarked appendix. Despite the passage of almost seventeen (17) months, Mr. Gibson has not yet filed anything and instead claims that the Court's August 15, 2019 order combined with his own inaction means that the matter as to whether he is a

vexatious litigant remains unresolved and is not a final order.

On April 3, 2020, after more than a year had passed since summary judgment against Mr. Gibson was granted, the opposing counsel filed a Motion to Deny Reconsideration and Partially Close Case at Docket Entry 196. On the morning of April 8, 2020, the date set for a hearing on opposing counsel's motion to deny reconsideration, Mr. Gibson filed emergency motions to recuse Judge Martz and stay the case. Judge Martz granted the recusal motion on April 13, 2020, leaving the vexatious litigant order in place.

The malpractice case discussed above is not counted toward the five-in-five vexatious litigant threshold because the summary judgment entered against him was appealed by Mr. Gibson on June 14, 2020, who has moved for several extensions of time and has not yet filed his initial brief. See Fourth District Court of Appeal case no. 4D20-1389, a case recently consolidated with opposing counsel's appeal of the lower court's denial of Section 57.105, Florida Statutes sanctions; case no. 4D20-1876.

Opposing counsel filed a motion to strike Mr. Gibson's motion for reconsideration of the vexatious litigant order in order to resolve the issue of finality in lieu of Mr. Gibson's demonstrated inaction. Until such time as that motion is resolved, the Court will reserve on this aspect of relief requested pending said resolution.

The Court takes judicial notice of the matters expressed by the parties and documents filed, including Court orders, in related cases.

The Court further finds that the Assignments routinely used by Mr. Gibson amount to a means to evade the statutory prohibition against practicing law without a license, a felony, and are therefore illegal and unenforceable.



The Court finds that matters which Mr. Gibson seeks a remedy in this case are barred by collateral estoppel, since these same matters were already adjudicated in at least one other case of which Mr. Gibson was aware.

DONE AND ORDERED this March 3, 2021.

_____
Circuit Court Judge

Copies to:
Jeffrey M. Siskind, Esq. via email; jeffsiskind@msn.com
Robert Gibson, pro se via email; intelexigent@gmail.com